1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HOMESITE INSURANCE COMPANY
OF THE MIDWEST,

Plaintiff,

v.

DANNY L. WALKER, KIM M.
WALKER, and L.D.,

Defendant.

CASE NO. C18-5879 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Homesite Insurance Company of

the Midwest's ("Homesite") motion for summary judgment. Dkt. 23. The Court has

considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby grants in part and denies in part the motion for the

reasons stated herein.

## I.   PROCEDURAL AND FACTUAL HISTORY

On September 10, 2017, Geico Insurance Agency, Inc. issued Danny and Kim

Walker ("the Walkers") a homeowners insurance policy underwritten by Homesite ("the

policy"). Dkt. 1-2. The policy period began on September 7, 2017, and ended on September 8, 2018. Dkt. 1-2 at 4.

**A.      The Underlying Lawsuit**

On May 25, 2018, James Dunn ("Dunn") and his minor child L.D. (collectively "the Dunns") filed suit against the Walkers in Kitsap County Superior Court for the State of Washington claiming outrage and negligent supervision and care. Dkt. 1-1, ¶ 4.2. The Dunns alleged that while she was a minor, L.D. was sexually abused on multiple occasions by R.M., a minor child in the legal custody of the Walkers. *Id.* ¶ 3.1. The abuse occurred between 2014 and 2018. *Id.* The Walkers are L.D.'s grandparents, and the Dunns argue that she stayed at their home when the material events occurred. Dkt. 24 at 2.

The Dunns alleged that the Walkers knew or should have known of R.M.'s propensity to commit the acts alleged and breached their duty to protect L.D. and that the Walkers' actions and inactions "made it more difficult for Plaintiff L.D. to make any complaint about the sexual abuse or to protect herself from said abuse, and further . . . contributed to the occurrence of sexual abuse." Dkt. 1-1, ¶ 3.1 The Dunns alleged that the Walkers' actions and inactions caused them physical and emotional injury requiring medical treatment, as well as pain and suffering. *Id.* ¶¶ 3.2–5.4.

The Walkers tendered defense to Homesite. Dkt. 1-3 at 2. On October 19, 2018, Homesite sent the Walkers a letter agreeing to defend them under a reservation of rights. *Id.* In the letter, Homesite set out its view that the policy did not provide coverage for the claims in the underlying lawsuit, explaining in relevant part that coverage was only

available for accidents and for unintentional acts by an insured, both of which precluded coverage for sexual abuse. Dkt. 1-3 at 5. On October 30, 2018, Homesite filed the instant complaint against the Walkers, L.D., and Dunn requesting a declaration that it owes no duty to defend or indemnify the Walkers in the underlying lawsuit. Dkt. 1.

On February 15, 2019, the Dunns filed an amended complaint in the underlying lawsuit. Dkt. 19-1. The complaint removed Dunn as a plaintiff and added additional facts explaining that the Walkers, as the only adults supervising L.D., had breached their duty to ensure L.D. received appropriate medical and/or psychological care. Specifically, the complaint alleges as follows:

> During plaintiff's childhood she was sexually abused on multiple occasions, between the years 2014 and 2018 by R.M. Defendants Danny and Kim Walker, are the legal guardian of R.M. Defendants Danny and Kim Walker knew or should have known of the propensity of Defendant R.M. for the behavior complained of herein, and had a duty to protect minor Plaintiff L.D. from sexual abuse harm, which they failed to do. Defendants Danny Walker and Kim Walker, by their actions and inactions, made it more difficult for Plaintiff L.D. to make any complaint about the sexual abuse or to protect herself from sexual abuse; further defendants, by their actions and inactions, contributed to the occurrence of sexual abuse.
>
> As a direct and proximate result of the actions and inactions of defendants Danny Walker and Kim Walker, plaintiff, L.D. has damages in an amount to be proven at the time of trial.
>
> At material times L.D. stayed with defendants when they were the only adults with supervisory responsibility. This gives rise to a special relationship between defendants and L.D. which gives rise to supervisory responsibility which includes but is not limited to the duty to insure L.D. receives necessary medical and/or psychological care.
>
> Following the sexual abuse of plaintiff by R.M., L.D. over a period of time developed anxiety, distress, impairment in family and childhood activities and other important areas of functioning.
>
> Following the sexual abuse of plaintiff by R.M. reasonable grandparents should foresee the possibility of psychological harm and the need for psychological therapy and counseling for L.D.

| | |
|---|---|
| 1 | The psychological changes to L.D. as set forth in Paragraph 3.4 were reasonable given the period of time after the sexual abuse, and L.D. needed |
| 2 | psychological therapy and counseling to address the psychological changes set forth in Paragraph 3.4. |
| 3 | The psychological changes to L.D. were unintended by defendants Danny and Kim Walker. Nevertheless, defendants Walker failed to assist in |
| 4 | getting L.D. necessary psychological treatment to address her developing psychological injuries. |
| 5 | L.D. developed objective psychological symptomatology as a result of the failure of defendants Danny and Kim Walker to assist in getting L.D. |
| 6 | necessary treatment to address the psychological changes set forth in Paragraph 3.4. |
| 7 | Defendants Danny and Kim Walker had a duty to foresee the possibility of the psychological injuries to L.D. set forth at Paragraph 3.4. |
| 8 | This is because of the "special relationship" between defendants and L.D. which give rise to supervisory responsibilities as set forth in Paragraph 3.5. |
| 9 | In failing to foresee the psychological changes to L.D. who was under their care and assist in getting L.D. necessary psychological |
| 10 | treatment defendants breached their duty to L.D. |
| 11 | As a direct and proximate result of their failure to assist L.D. in obtaining psychological treatment for L.D. has sustained injuries and damages the amount which will be proven at the time of trial. |
| 12 | |
| 13 | *Id*. ¶¶ 3.3–3.11. Based on these allegations, L.D. asserts two claims in an extremely vague and conclusory manner as follows: |
| 14 | |
| 15 | For her first cause of action L.D. alleges defendants are liable to plaintiff for the torts of outrage and negligent supervision and care, pursuant to the allegations in Paragraphs 1.1 and 3.2. |
| 16 | For her second cause of action L.D. alleges defendants are also liable to plaintiff for the tort of negligent infliction of emotional distress pursuant |
| 17 | to the allegations set forth in Paragraphs 3.3 through 3.11. |
| 18 | *Id*. ¶¶ 4.1, 4.2. |
| 19 | On May 9, 2019, Homesite filed a motion for summary judgment. Dkt. 23. On |
| 20 | May 28, 2019, the Walkers and L.D. responded. Dkts. 24, 25. On May 31, 2019, |
| 21 | Homesite replied. Dkt. 26. |
| 22 | |

**B.      The Policy**

In the "Definitions" section of the policy, item four "Bodily injury" is defined as "bodily harm, sickness or disease, except a disease which is transmitted by an 'insured' through sexual contact." Dkt. 19-2 at 20.[1] Item eight, "Insured" is defined to include the policyholder and residents of the policyholder's household who are the policyholder's relatives or "[o]ther persons under the age of 21 and in your care or the care of a resident of your household who is your relative[.]" *Id*. at 21. Item eight also provides that "[u]nder both Sections I and II, when the word 'an' immediately precedes the word 'insured', the words 'an' 'insured' together mean one or more 'insureds'." *Id.* Item eleven, "occurrence," is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period" in bodily injury or property damage. *Id*. at 22.

Under Section II – Exclusions, item E.1 "Coverage E – Personal Liability And Coverage F – Medical Payments to Others" provides that personal liability coverage and medical payment to others coverage do not apply to:

> "Bodily injury" or "property damage" which is expected or intended by an 'insured', even if the resulting 'bodily injury' or 'property damage';
>
> a. Is of a different kind, quality or degree than initially expected or intended; or
>
> b. Is sustained by a different person, entity or property than initially expected or intended.

---

[1] ECF page numbering.

*Id.* at 40. Also, under Section II – Exclusions, item E.6 "Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse" provides that personal liability coverage and medical payments to others coverage does not apply to "'bodily injury' or 'property damage' **arising out of** sexual molestation, corporal punishment or physical or mental abuse[.]" *Id.* at 41 (emphasis added).

## II. DISCUSSION

The dispute in this case centers on the interrelationship of negligence and intentional acts when determining causation for the purpose of the duty to defend grandparents, the Walkers, sued for negligence based on injuries sustained when one of their grandchildren, R.M., sexually abused another of their grandchildren, L.D., while both children where under the Walkers' care. Homesite seeks a declaration that it has no duty to defend or indemnify the Walkers from the underlying complaint. Dkt. 19.

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.      Duty to Defend and Indemnify**

It is well-established Washington law "that the duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405 (2010), *as corrected on denial of reconsideration* (June 28, 2010) (citing *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 392 (1992)). While "[t]he duty to

indemnify exists only if the policy *actually covers* the insured's liability[,] [t]he duty to defend is triggered if the insurance policy *conceivably covers* allegations in the complaint." *Id.* (citing *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53 (2007)) (emphasis in original). However, while the duty to defend is distinctly broader than the duty to indemnify, both are derivative of the same underlying concept: coverage under the applicable policy. "When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action." *Am. Best Food*, 168 Wn.2d at 405.

Because the underlying litigation is unresolved, the duty to defend is ongoing and the Court's review must generally be limited to "look[ing] at the 'eight corners' of the insurance contract and the underlying complaint." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Coinstar, Inc.*, 39 F. Supp. 3d 1149, 1156 (W.D. Wash. 2014). "[I]f a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Woo*, 161 Wn.2d at 53. "Terms are to be interpreted as the 'average person purchasing insurance' would understand them." *Safeco Ins. Co. of Am. v. Wolk*, 342 F. Supp. 3d 1104, 1108 (W.D. Wash. 2018) ("*Wolk*") (quoting *Woo*, 161 Wn. 2d at 52)).

### 1.    Policy Exclusions and Efficient Proximate Cause

Homesite argues that there is no coverage under the policy for any claim for three reasons. Dkt. 23 at 4. First, Homesite argues the sexual abuse claims "do not constitute 'bodily injury' caused by an 'occurrence.'" *Id.* Second, Homesite argues that R.M. intended or expected L.D. would be injured when he sexually abused her, invoking the

1  policy's intentional acts exclusion. *Id.* Third, Homesite argues that L.D.'s injuries arise

2  from sexual molestation and physical or mental abuse and are barred by the exclusion for

3  injuries that "arising out of" such acts. *Id.*

4      In response, the Dunns focus on the first claim in the underlying complaint and

5  contend that the Walkers' negligent supervision is the efficient proximate cause of L.D.'s

6  injuries for this claim. Dkt. 24 at 8–14. The Walkers focus on the second claim in the

7  underlying complaint, which is negligent infliction of emotional distress ("NIED"), and

8  contend that L.D.'s alleged injuries arise from the Walkers' failure to recognize L.D.'s

9  objective symptomology, not R.M.'s prior sexual abuse. Dkt. 25 at 4–8. It is important to

10 note the causal sequencing of each claim. Regarding the negligent supervision or failure

11 to protect claim, the Dunns allege the Walkers' negligent acts preceded R.M.'s

12 intentional acts. Regarding the NIED claim, the Dunns allege that R.M.'s intentional acts

13 preceded the Walkers' negligent acts. This distinction is important when analyzing the

14 parties' dispute over the efficient proximate cause of L.D.'s alleged injuries.

15          a.      **The Occurrence Exclusion**

16      The policy provides coverage for an occurrence, which is defined as an accident.

17 Homesite is correct that under Washington law an intent to injure is inferred in cases of

18 sexual abuse. *See, e.g. Rodriguez v. Williams*, 107 Wn. 2d 381, 387 (1986) ("intent to

19 injure, while normally a subjective determination under the wording of this policy, should

20 be inferred to the insured in sex abuse cases."). Under this doctrine, Homesite argues that

21 the Dunns' claims are barred because they are both based on R.M.'s intentional sexual

22

1 assault. The Court agrees as to the negligent supervision claim but disagrees as to the

2 NIED claim.

3        The Dunns cite *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017), *as*

4 *modified* (Aug. 16, 2017), *reconsideration denied* (Aug. 17, 2017) ("*Xia*"), for the

5 proposition that negligence can constitute the covered occurrence that is the efficient

6 proximate cause of a loss, preserving coverage for an insured even when the negligence

7 starts a causal chain that leads to injury through an excluded mechanism. Dkt. 24 at 8. In

8 *Xia*, negligent installation of a hot water heater caused the release of toxic levels of

9 carbon monoxide into a home. *Xia*, 188 Wn. 2d at 174. Though the insurance policy

10 contained a broad exclusion for bodily injury caused by a pollutant "regardless of the

11 cause of the pollution or pollutants," the Washington Supreme Court found that because

12 the complaint's allegations "provided a reasonable and conceivable basis to believe that

13 the negligent installation of the hot water heater, itself a covered occurrence under the

14 policy provisions, set in motion a causal chain wherein the venting of exhaust lowered

15 the oxygen content of the room such that a normally nonpolluting appliance began

16 discharging toxic levels of carbon monoxide fumes" the insurer had a duty to defend. *Xia*,

17 188 Wn. 2d at 184, 189.

18        Regarding the negligent supervision claim, the Dunns argue that "[i]t is the

19 occurrence of failing to supervise and protect that caused the harm." Dkt. 24 at 12. This

20 Court has rejected this argument in a factually similar circumstance. In *Wolk*, the Court

21 explained that that factual flaw in the argument advanced by an insured accused of

22 negligent supervision is that the victim of sexual abuse "d[id] not allege that [the

1  insured's] negligence caused the sexual abuse . . . ." 342 F. Supp. 3d at 1107. Similarly,

2  the Dunns fail to allege that the Walkers' negligence caused the sexual abuse. Instead,

3  they allege that the Walkers failed to protect "L.D. from sexual abuse harm," "made it

4  more difficult for Plaintiff L.D. to make any complaint about the sexual abuse or to

5  protect herself from sexual abuse," and "contributed to the occurrence of sexual abuse."

6  Dkt. 19-1, ¶ 3.1. In other words, they allege that the Walkers' negligence created an

7  environment that enabled R.M. to intentionally harm L.D. While the harm may not have

8  occurred without the negligence, the negligence did not cause the harm to L.D. because

9  R.M.'s intentional acts caused the harm. Thus, the Dunns have failed to establish that the

10 Walkers' negligence is an occurrence under the policy.

11        The Dunns' arguments based on the efficient proximate cause rule also fail.

12 Essentially, they argue that the Walkers' negligent acts set in motion a chain of events

13 that resulted in R.M.'s intentional acts. Similar to the plaintiff in *Wolk*, they have failed to

14 cite any authority for the proposition that "the efficient proximate cause of an excluded

15 intentional act can be negligence . . . ." 342 F. Supp. 3d at 1110. If the Dunns alleged that

16 R.M. negligently harmed L.D., then they would have a persuasive argument that the

17 Walkers' negligence created an unbroken chain of events resulting in harm to L.D. The

18 Dunns, however, allege the intentional and intervening cause of R.M.'s sexual abuse,

19 which is an event that breaks the causal chain and precludes the use of the efficient

20 proximate cause rule. *See, e.g.*, *Graham v. Pub. Emps. Mut. Ins. Co.*, 98 Wn. 2d 533, 538

21 (1983) ("It is the efficient or predominant cause which sets into motion the chain of

22 events producing the loss which is regarded as the proximate cause, not necessarily the

1 | last act in a chain of events."). The Dunns have failed to establish that a negligent act that

2 | precedes an intentional act may be considered the predominate cause of the ultimate

3 | injury. Therefore, the Court grants Homesite's motion as to the Dunns' claim for

4 | negligent supervision.

5 | Regarding the NIED claim, it is conceivable that at least some of L.D.'s injuries

6 | were caused by the Walkers' negligence. The Dunns allege that, after R.M.'s sexual

7 | abuse, L.D. exhibited objective signs of psychological injuries and the Walkers failed to

8 | notice these objective signs, which caused L.D. additional injuries. Dkt. 19-1, ¶¶ 3.1–

9 | 3.11, 4.2. Homesite completely misconstrues this claim and attempts to rephrase the

10 | claim as alleging that the objective symptomology is the injury. Dkt. 26 at 6. This is

11 | incorrect because the claim states that L.D.'s objective symptomology put the Walkers on

12 | notice of injury and the Walkers thus had a duty to assist L.D. in seeking appropriate

13 | medical care for these injuries. While the Court agrees with Homesite that the efficient

14 | proximate cause rule is not applicable to this claim, the Court disagrees that the claim is

15 | entirely based on the intentional acts of R.M. Instead, the Court construes the claim as

16 | based on the Walkers' negligent failure to observe and procure medical care for L.D. As

17 | alleged, the claim is based on a theory of negligence that could conceivable be considered

18 | an occurrence. Therefore, the Court concludes that the Dunns have met their burden to

19 | establish coverage under the policy for this claim and denies Homesite's motion on this

20 | issue for this claim.

21

22

### b.     The Exclusions

Homesite argues that the Dunns' second claim is barred by the exclusion for intentional acts of an insured and by the exclusion for injuries "arising out of" sexual molestation and physical or mental abuse ("the abuse exclusion"). Dkt. 23 at 10–13. First, the Dunns allege that at least some of L.D.'s injuries were caused by the Walkers' failure to recognize and provide for L.D., which are separate from R.M.'s intentional acts. Thus, Homesite has failed to establish that the intentional acts exclusion applies.

Second, Homesite contends that all of L.D.'s injuries arise from R.M.'s sexual acts. "The phrase 'arising out of' is unambiguous and has a broader meaning than 'caused by' or 'resulted from.'" *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404 (1989) ("*Aetna*") (citing *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 (1975)). "It is ordinarily understood to mean 'originating from', 'having its origin in', 'growing out of', or 'flowing from.'" *Id.* (citing *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329 (1986)). Although this appears to afford a very broad interpretation to the term "arising out of," the Washington Supreme Court subsequently limited *Aetna* in *American Best Food*, stating that the appellate court "did not consider an allegation that postaccident negligence by the insured caused injuries." *Am. Best Food*, 168 Wn.2d at 409.  The Washington Supreme Court stated that it found "persuasive precedent from other states that have found claims that the insured acted negligently after an excluded event are covered." *Id.* Regarding allegations that postassault negligence caused or exacerbated injuries, *American Best Food* held that because exclusionary clauses are to be most strictly construed against the insurer, the "policy afforded coverage for

1  postassault negligence to the extent it caused or enhanced [the plaintiff's] injuries." *Id.* at

2  411.

3         In this case, the same rationale applies to L.D.'s NIED claim. The Dunns allege

4  that the Walkers acted negligently after the excluded sexual assault and physical or

5  mental abuse and that subsequent negligence either caused L.D. new injuries or enhanced

6  L.D.'s existing injuries. Therefore, construing the sexual assault and physical or mental

7  abuse exclusion against Homesite, the Court concludes that Homesite has failed to

8  establish that this exclusion bars the Dunn's NIED claim and denies Homesite's motion

9  on this issue.

10        **2.     Additional Discovery**

11        The Dunns request that if the Court does not deny summary judgment, the Court

12 continue Homesite's motion until such time as L.D.'s counsel is able to depose the

13 Walkers after reviewing R.M.'s medical/psychological records in the underlying lawsuit

14 in order to further understand the Walkers' knowledge of R.M.'s proclivity for harm.

15 Dkt. 24 at 5–6, 10. The Court denies the request to continue resolution of this motion for

16 additional discovery because the Dunns have failed to show that any amount of additional

17 information will alter the conclusion that R.M.'s intentional acts were a significant,

18 intervening event that broke the causal chain set in motion by the Walkers' alleged

19 negligence.

20        **3.     Duty to Indemnify**

21        The duty to indemnify "hinges on the insured's actual liability to the claimant and

22 actual coverage under the policy." *Woo*, 161 Wn.2d at 53 (2007) (citing *Hayden v. Mut.*

*of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000)). While Homesite also seeks a ruling on its duty to indemnify, its motion is premature. Actual coverage under the policy may be determined by a dispositive ruling on the issue of causation, and liability may be determined by a jury verdict. Without further narrowing of the issues in the underlying proceeding, the Court's opinion on the duty to indemnify would be advisory. Therefore, Homesite's motion for summary judgment on the duty to indemnify is denied as premature.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Homesite's motion for summary judgment, Dkt. 23, is **GRANTED in part** and **DENIED in part**.

Dated this 27th day of August, 2019.

BENJAMIN H. SETTLE
United States District Judge